Richard Martin **DURAN**, Petitioner,

v.

Roy **CASTRO**, Warden, et al., Respondents.

No. CIV. S–00–305–LKKJFM.

United States District Court, E.D. California.

Oct. 18, 2002.

FD, Rachelle Diane Barbour, Federal Defender, Sacramento, CA, Richard Martin Duran, Susanville, CA, for Petitioner.

Robert R Anderson, Clifford E Zall, Sacramento, CA, for Respondent.

## ORDER

KARLTON, Senior District Judge.

Petitioner, a state prisoner, brings an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72–302, his application was referred to the magistrate judge who recommended that the application be denied.

Petitioner, through counsel, has objected to the magistrate judge's findings and recommendation. I consider petitioner's objections on the pleadings and papers filed herein and without oral argument.[1] *See* Local Rule 78–230(h).

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 4, 1997, J.C. Penney store security officers detained petitioner, Richard Duran, for attempting to shoplift a belt and a pair of socks worth a total of $26.99. A long-time heroin addict, Duran was found to have 1.55 grams of heroin and a syringe in his possession. Duran was charged with simple possession of heroin and petty theft with a prior.

Duran pled guilty to possession of 1.55 grams of heroin in exchange for the dismissal of the petty theft charge and a recommendation that he serve no more than twenty-five years to life in prison. Under the terms of the agreement, Duran admitted that he had suffered two prior serious felonies—two 1989 kidnapping convictions stemming from a single incident where, upon being refused a ride by a woman, Duran grabbed her seven-year-old son and told the woman to do as he said or he would hurt the boy. Keeping its end of

the bargain, the State dismissed the petty theft charge with the understanding that the judge could consider it at sentencing.[2]

The trial judge sentenced Duran to twenty-five years to life. In light of Duran's criminal history the judge explained, "I still see your record as just a person who just can't make it outside ... I truly feel if you were given a shorter sentence, you wouldn't be out two minutes before you reoffended." [3] *See People v. Duran,* Third Appellate Dist. No. CO28055 at 6 (filed March 31, 1999).

Duran appealed to the California Court of Appeals. Among other things, he argued that his sentence was cruel and unusual in violation of the Eighth Amendment. The California Court of Appeals rejected this claim. *See id.* The California Supreme Court denied review and Duran, proceeding pro se, brought an application for a writ of habeas corpus in this court. Upon receipt of the magistrate judge's findings and recommendation that petitioner's application be dismissed, and after a review of the record, this court appointed counsel for the petitioner.

## II.

## ANALYSIS

This court was initially prompted to appoint counsel for petitioner after the Ninth

---

1. The district court reviews *de novo* the magistrate judge's conclusions of law and those portions of the proposed findings of fact to which objection has been made. *See* 28 U.S.C. § 636(b)(1)(C). The court may, however, assume the correctness of that portion of the proposed findings of fact to which no objection has been made. *See United States v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989). The court is not bound to adopt the magistrate judge's findings and recommendations, but should exercise "sound judicial discretion" in making its own determination on the record. *United States v. Raddatz,* 447 U.S. 667, 675–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

2. Petitioner, who filed his habeas petition pro se, did not attack the validity of his plea agreement or raise an ineffective assistance of counsel claim. Nonetheless, I cannot help but note that the disposition obtained for petitioner was a plea bargain only in the most oxymoronic sense.

3. After serving his term for kidnapping, petitioner had been out of prison for about a year before he was charged with possession of heroin.

Circuit issued two decisions finding the application of California's Three Strikes law unconstitutional, albeit under circumstances different than those at bar. *See Andrade v. Attorney General of the State of California,* 270 F.3d 743 (9th Cir.2001); *Brown v. Mayle,* 283 F.3d 1019 (9th Cir. 2002). The fact that the Supreme Court has granted *certiorari* in one of those decisions, *see Lockyer v. Andrade,* — U.S. ——, 122 S.Ct. 1434, 152 L.Ed.2d 379 (2002), would ordinarily warrant a stay of the proceedings in this matter pending a decision by the High Court. That said, the factual differences between this case and *Andrade* are significant. Moreover, review of this case has raised questions not addressed by the Ninth Circuit in *Andrade* or *Brown, supra.* In particular, this case requires consideration of the effect of the California Supreme Court's interpretation of petitioner's sentence as a life sentence without parole. I also consider here, apart from the rationale in *Brown,* 283 F.3d at 1036, how the Double Jeopardy Clause circumscribes the relevance of petitioner's recidivism for purposes of proportionality review. Thus, while the grant of *certiorari* may suggest a stay, this case is sufficiently distinct from *Andrade* that a decision there may not be dispositive here. Accordingly, prompt resolution appears appropriate.

4. Because the California Supreme Court denied petitioner's review petition without comment, the relevant opinion is that of the state court of appeal, as it is the last reasoned decision on petitioner's Eighth Amendment claim. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

5. Federal habeas corpus relief is reserved for violations of the Constitution and the laws of the United States. *See* 28 U.S.C. § 2254(a). "Under AEDPA, we may reverse a state court's decision denying relief only if that decision is 'contrary to, or involves an unrea-

For the reasons that follow, the court concludes that petitioner's objections to the magistrate judge's findings and recommendations must be sustained, and that his application for a writ of habeas corpus must be granted.

## A. THE STATE COURT'S DECISION

The petitioner challenged his sentence on Eighth Amendment grounds. The California Court of Appeals responded with one sentence:

> In light of defendant's recidivism and extensive criminal history, we also reject his contention that the sentence of 25 years to life constitutes cruel and unusual punishment in violation of the Eighth Amendment of the federal Constitution and article I, section 17 of the California Constitution. (*Cf. People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1134–37, 46 Cal.Rptr.2d 351).

*See People v. Duran,* Third Appellate Dist. No. CO28055 at 6–7 (filed March 31, 1999).[4]

Petitioner's application for a writ of habeas corpus depends upon whether the Court of Appeals' summary rejection of his Eighth Amendment challenge was either contrary to Supreme Court precedent or amounted to an unreasonable application of clearly established Supreme Court precedent. *See Van Tran v. Lindsey,* 212 F.3d 1143, 1155 (9th Cir.2000).[5] I turn

sonable application of, clearly established federal law as determined by the Supreme Court of the United States.' " *Van Tran v. Lindsey,* 212 F.3d 1143, 1149 (9th Cir.2000) (quoting 28 U.S.C. § 2254(d)(1)). The Ninth Circuit has explained these standards as follows:

A state court's decision can be "contrary to" federal law either 1) if it fails to apply the correct controlling authority, or 2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. A state court's decision can involve an "unreasonable appli-

now to the Supreme Court's Eighth Amendment jurisprudence and its application in petitioner's case.

## B. EIGHTH AMENDMENT ANALYSIS OF PETITIONER'S SENTENCE UNDER CLEARLY ESTABLISHED SUPREME COURT PRECEDENT

While the Eighth Amendment prohibits excessive punishments, it does not make clear how courts are to determine the boundary beyond which punishments become excessive. This is especially so where the penalty is a fine, see *United States v. Bajakajian*, 524 U.S. 321, 335–36, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), or a term of imprisonment. See *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)(Kennedy, J., concurring)(citing *Solem v. Helm*, 463 U.S. 277, 289–90, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)(quoting *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980))).

█ Because it is said that courts are not particularly suited to determine the

appropriate term of imprisonment for a given crime, see *id.* at 1000, 111 S.Ct. 2680, Eighth Amendment jurisprudence has developed a restrictive set of criteria.[6] When reviewing a sentence of imprisonment under the Eighth Amendment, courts need not find "strict proportionality." Rather, the term of imprisonment will fail to pass constitutional muster only in cases of "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* (citing *Solem v. Helm*, 463 U.S. 277, 288, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). The Supreme Court has observed that such instances "have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); see also *Solem*, 463 U.S. at 289–90, 103 S.Ct. 3001 (1983); *Harmelin*, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring).

█ Having acknowledged the difficulty inherent in line-drawing, however, it is equally certain that relativism cannot serve as a guiding principle. The courts are not free to abdicate their responsibility to determine the limitations created by the Eighth Amendment in favor of uncon-

---

cation" of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir.2000)(citing *Williams v. Taylor*, 529 U.S. 362, 405–09, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

**6.** It is, to say the least, not apparent why legislators, who have no experience fixing actual sentences, are more qualified than judges, whose business it is to actually sentence. Indeed,

historically, legislatures, recognizing their limitations, provided only broad parameters for punishment, leaving to the experienced judiciary the task of fixing the actual sentence. The recent trend towards more restrictive statutes reflects discontent with per-

ceived disparities and is not predicated upon asserted superior legislative insight.

Moreover, even assuming legislatures were in a better position to fix sentences then judges, the law considered here is the result of the initiative process—a process not noted for careful and deliberate consideration. See *Carver v. Nixon*, 72 F.3d 633, 644 (8th Cir. 1995)("The process of enactment, while perhaps not always perfect, includes deliberation and an opportunity for compromise and amendment, and usually committee studies and hearings. These are substantial reasons for according deference to legislative enactments that do not exist with respect to proposals adopted by initiative.")(citing *Yniguez v. Arizonans for Official English*, 69 F.3d 920, 930–31 (9th Cir.1995)(en banc)(noting ballot initiative lacked legislative findings and was not subjected to extensive hearings or analysis)).

strained legislative power. Instead, "guided by objective factors," courts must review penalties for gross disproportionality. *See Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring)(citing *Solem,* 463 U.S. at 277, 103 S.Ct. 3001 (1983)); *Bajakajian,* 524 U.S. at 336–37, 118 S.Ct. 2028 (1998)(applying the standard for gross disproportionality set forth in *Solem,* 463 U.S. at 288, 103 S.Ct. 3001, to the question of whether a fine was excessive in violation of the Eighth Amendment); *Solem,* 463 U.S. at 288, 290–91, 103 S.Ct. 3001. The Supreme Court has prescribed the process for such a review as first requiring the reviewing court to determine whether a "threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring).[7] If so, the court should undertake the intrajurisdictional and interjurisdictional analyses set forth in *Solem, see id.,* that is, compare the challenged sentence with "the sentences imposed on other criminals in the same jurisdiction," and with "the sentences imposed for commission of the same crime in other jurisdictions." *Solem,* 463 U.S. at 292, 103 S.Ct. 3001. Below, I apply the prescribed process.

### 1. A Threshold Comparison of Petitioner's Sentence and Offense

#### a. *Harshness of the Penalty*

The Ninth Circuit has noted numerous aspects of California's Three Strikes law which "combine to make it particularly severe." *Andrade,* 270 F.3d at 748; *see also Brown,* 283 F.3d at 1021. Rather than reiterate most of the Circuit's observations, I simply note that, in large part, they apply with equal force to the petitioner in this case.[8] What the Circuit did not address in *Andrade* or *Brown* is the consequence for Eighth Amendment analysis of California's own interpretation of the sentence given petitioner. As I now explain, that interpretation has important consequences in resolving the matter at bar.

■■■ Under California law, when a sentence is challenged as cruel and unusual, it must be examined "under the assumption that the maximum possible sentence will be served." 22 CAL. JUR.3D *Criminal Law: Post–Trial Proceedings* § 164(citing *People v. Morgan,* 36 Cal. App.3d 444, 111 Cal.Rptr. 548 (Cal.Ct.App. 1973)); *see also In re Foss,* 10 Cal.3d 910, 918–19, 112 Cal.Rptr. 649, 519 P.2d 1073 (1974) (disapproved on other grounds by *People v. White,* 16 Cal.3d 791, 129 Cal. Rptr. 769, 549 P.2d 537 (1976)). The state courts' assumption that the maximum sentence will be served is binding on this court as an authoritative construction of the effect of California's sentencing law. *See Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)(state supreme court's construction of State's own law is authoritative). In sum, federal courts must consider petitioner's sentence to be life in prison without parole—the

---

7. The test set forth in Justice Kennedy's concurrence is the " 'rule of Harmelin' because it is the 'position taken by those Members who concurred in the judgment[ ] on the narrowest grounds ....' " *Andrade v. Attorney General of the State of California,* 270 F.3d 743, 754 (9th Cir.2001)(quoting *United States v. Bland,* 961 F.2d 123, 128–29 (9th Cir.1992)).

8. The only notable difference between the "particularly severe" application of Three Strikes in *Andrade* and *Brown* and its application in petitioner's case is that petitioner's principal offense was not a "wobbler" that could be characterized as a misdemeanor or a felony. Rather, possession of heroin is a felony. As I discuss, *infra,* however, that petitioner's offense is a felony in name does not alter the minor nature of that offense.

most severe punishment available next to capital punishment.[9] *See Solem,* 463 U.S. at 297, 103 S.Ct. 3001.

### b. *Gravity of the Principal Offense*

 The minor nature of petitioner's offense contrasts starkly with the severity of his punishment. Taking into account the "harm caused or threatened to the victim or society, and the culpability of the offender," *Solem,* 463 U.S. at 292, 103 S.Ct. 3001, it is clear that, while simple possession of heroin is categorized as a felony in California, it lacks the earmarks of a serious offense.[10]

First, simple possession of heroin is a non-violent crime. *See Solem,* 463 U.S. at 292, 103 S.Ct. 3001 ("[N]onviolent crimes are less serious than crimes marked by violence or the threat of violence"). The possession of a small amount of heroin carries no more threat of violence than does addiction to heroin, for which impris-

onment is proscribed by the Eighth Amendment. *See Robinson v. California,* 370 U.S. 660, 667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Indeed, as a matter of common experience, an addict who is not in possession of narcotics likely poses a greater risk to the community than one who possesses the means to satisfy his or her craving.[11]

A second, and related consideration is the magnitude of the harm caused or threatened by petitioner's offense. *See Solem,* 463 U.S. at 293, 103 S.Ct. 3001 ("absolute magnitude of the crime may be relevant. Stealing a million dollars is viewed as more serious than stealing a hundred dollars"). Petitioner was convicted of possession of 1.55 grams of heroin, which was presumptively and, as apparent by the paraphernalia on his person at the time of his arrest, actually for his personal use. Unlike the drug offenses previously

9. Such an interpretation of petitioner's sentence is not merely formalistic. Indeed, at present the availability of parole for those with term-to-life sentences is very much in question. *See* Petitioner's Request to Expand Record, Exh. 1, Legislative Analyst's Analysis of 2000–02 Budget Bill: Board of Prison Terms, at 2–3 (discussing unwritten policy of not releasing life-term inmates on parole).

Of course, the fact that parole is discretionary would generally not, in and of itself, be enough to render the possibility of parole irrelevant for the purposes of proportionality review. *See Rummel,* 445 U.S. at 280–81, 100 S.Ct. 1133 ("the possibility of parole, however slim, serves to distinguish Rummel from a person sentenced under a recidivist statute . . . which provides for a sentence of life without parole . . .").

Rather, the United States Supreme Court has made practical assessments of the availability of parole in reviewing a prison term for proportionality. *See Solem,* 463 U.S. 277 at 302, 103 S.Ct. 3001, 77 L.Ed.2d 637 (explaining that the *Rummel* Court "did not rely simply on the existence of some system of parole. Instead it looked to the provisions of the system presented, including the fact that Texas had 'a relatively liberal policy of grant-

ing good time credits to its prisoners . . . .'); *id.* at 303, 100 S.Ct. 1133 (noting, in the course of finding *Solem* petitioner's life sentence was disproportionate, that even if petitioner's sentence was commuted to life with the possibility of parole, the parole system to which he was subject was "far more stringent than the one before us in *Rummel.*").

Here, the State court's interpretation of petitioner's sentence as that of life without parole coincides with the practical assessment this court would make under *Solem, supra.* Like the petitioner in that case, Duran cannot look to a liberal parole policy to mitigate the harshness of his life sentence.

10. In considering the gravity of the offense, the court must "focus on the principal felony." *Solem,* 463 U.S. at 296 n. 21, 103 S.Ct. 3001. Prior convictions are, however, "relevant to the sentencing decision," *id.,* and are discussed *infra.*

11. Obviously, it does not follow that all controlled substances share this characteristic. A person in possession of PCP, for example, likely poses a fairly serious threat of violence.

reviewed by the Supreme Court on proportionality challenges, petitioner's offense did not involve the distribution of controlled substances and all the attendant social problems caused thereby.[12] *See Harmelin,* 501 U.S. at 1002–1003, 111 S.Ct. 2680 (Kennedy, J., concurring); *see also Hutto v. Davis,* 454 U.S. 370, 372 n. 1, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982)(forty years in prison for possession of marijuana with intent to distribute did not constitute cruel and unusual punishment in light of evidence before the jury that defendant was an active drug dealer who had, among other things, sold drugs to be smuggled into prison).

Finally, and perhaps most significantly, I note that, in the judgment of the legislators and voters of California, simple possession of heroin is neither a serious nor violent crime. *Cf. Harmelin,* at 999–1000. California's Three Strikes law itself does not categorize simple possession of heroin as a serious or violent crime. *See* Cal.Penal Code §§ 667(d), 667.5(c), 1192.7(c) (defining serious or violent crimes that would qualify as first or second strikes). Nor, outside of the context of Three Strikes, is

simple possession penalized harshly. At the time petitioner was sentenced, the maximum sentence available for simple possession of heroin was three years. Moreover, courts were given discretion to grant probation or order diversion. *See* Cal.Penal Code § 1000. With the passage of Proposition 36 in 2000, this discretion has become a mandate. Absent factors in aggravation, a simple possession conviction merits only probation and drug treatment. Incarceration may not be imposed.[13] *See* Cal.Penal Code § 1210.1. Of course, in reviewing petitioner's sentence, the California Court of Appeals could not have known that Proposition 36 would come to pass. It is noteworthy only as it epitomizes what was evident both in reality and as a matter of legislative judgment well before its passage, namely, the minor nature of the offense.

### c. *Recidivism as an Aggravator*

■ Having determined that petitioner's principal offense was minor, however, does not end the inquiry. Although the focus should be on the seriousness of the principal offense, it is well-established that

---

**12.** I cannot agree with respondent that, under *Harmelin,* simple possession of heroin may be considered a serious risk to society. Respondent cites Justice Kennedy's observation that,

> Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture.

*Id.*

This observation, however, does not support the premise that petitioner's heroin possession posed a serious threat to society. Justice Kennedy cited a statistical relationship between crime and drugs to support his conclusion that a drug dealer, who had 672 grams of

cocaine for distribution, could reasonably be thought to pose a serious threat to society. *See id.* at 1003, 111 S.Ct. 2680. While statistics may tend to show that this amount of cocaine, distributed throughout a community, would result in "violence, crime, and social displacement," *id.,* they do not show that a given individual in possession of just any controlled substance would resort to violence and crime. Nor did Justice Kennedy purport to make that connection.

**13.** In passing Proposition 36, California voters reiterated their judgment that simple possession offenses were not serious. The stated purpose of Proposition 36 was, in pertinent part, to "preserv[e] jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies." *See* 2000 Cal. Legis. Serv. Prop. 36 § 3(c).

recidivism is an appropriate consideration in sentencing. Prior convictions may call for a "stiffened penalty for the latest crime, which is considered an aggravated offense because a repetitive one." *Witte v. United States,* 515 U.S. 389, 400, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995)(*quoting Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)).

 The repetitive criminal rationale has long provided a basis upon which to uphold recidivist sentencing schemes against double jeopardy challenges. *See, e.g., Graham v. West Virginia,* 224 U.S. 616, 624, 32 S.Ct. 583, 56 L.Ed. 917 (1912). It is not, however, simply a wild card that renders any penalty constitutional, however severe its terms and however minor the principle offense. Rather, as explained below, given the strictures of the Double Jeopardy Clause, recidivism may be taken into consideration in the sentencing decision only to the extent that it serves to aggravate the principal offense.

The limitation imposed by the Double Jeopardy Clause takes two forms. First, as the Ninth Circuit observed in *Brown,* prior convictions cannot aggravate the principal offense if they have no connection with the current offense. *Brown,* 283 F.3d at 1036. A stiffened penalty is warranted "only if the defendant's current offense involves a repetition of a particular offense characteristic, indicating that the defendant remains prone to that specific kind of antisocial activity." *Id.; cf. Witte v. United States,* 515 U.S. 389, 399, 115 S.Ct.

2199, 132 L.Ed.2d 351 (1995)("evidence of *related* criminal conduct to enhance a defendant's sentence for a separate crime . . . does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause." (emphasis added)).

 The Double Jeopardy Clause also imposes a second form of limitation, not addressed by the Ninth Circuit. Regardless of the relationship between the principal offense and prior convictions, those priors can only serve to enhance the punishment for the principal offense to the degree that such offense is susceptible to aggravation. Put differently, some minor offenses will never warrant severe punishment even at their most aggravated. *See, e.g., Rummel,* 445 U.S. at 274 n. 11, 100 S.Ct. 1133 (life sentence for hypothetical overtime parking violation would be disproportionate).[14] Thus, when punishment greatly exceeds that warranted by the aggravated offense, it begins to look very much as if the offender is actually being punished again for his prior offenses.

The Supreme Court addressed the potential for this very possibility in reviewing a sentence under California's Three Strikes Law. In *Monge v. California,* 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615(1998), Justice Scalia observed, "The California Code is full of 'sentencing enhancements' that look exactly like separate crimes, and that expose the defendant to additional maximum punishment."[15] *Id.*

---

**14.** This example was once dismissed by Justice Scalia as a " 'parade of horribles' form of argumentation." *See Harmelin,* 501 U.S. at 986 n. 11, 111 S.Ct. 2680 (Scalia, J., concurring). California's Three Strike, however, has demonstrated that Justice Scalia's imagination failed him in this instance. There is little to distinguish the parking violation example from the real-life parade of horribles that has emerged from the statute at bar. *See, e.g.,*

*Andrade,* 270 F.3d 743 (petitioner sentenced to life in prison for theft of videotapes worth $153.54); *Riggs v. California,* 525 U.S. 1114, 119 S.Ct. 890, 891, 142 L.Ed.2d 789 (1999)(dissent from denial of *certiorari* )("motivated by homelessness and hunger," petitioner stole a bottle of vitamins and was sentenced to life in prison).

**15.** Remarkably, the California Supreme Court has construed the recidivism enhancement

at 739, 118 S.Ct. 2246 (Scalia, J. dissenting). As the Supreme Court had observed earlier in the same term, however, a recidivism enhancement cannot be treated as an element of the offense without running afoul of the Double Jeopardy Clause. *See Almendarez–Torres v. United States,* 523 U.S. 224, 247, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)(declining to adopt a rule that a recidivism enhancement significantly increasing the sentence would be considered an element of the offense). Thus, when considering a recidivism enhancement under Three Strikes, the *Monge* Court did not adopt a per se rule that any recidivist enhancement that increased the maximum sentence should be viewed as an element of the offense. *Monge,* 524 U.S. at 728–29, 118 S.Ct. 2246. Rather, it reviewed the recidivist enhancement at issue to determine whether, as applied, it fell within a "constitutionally permissible" range such that it "did not place petitioner in jeopardy for an 'offense.'" *Id.* at 729, 118 S.Ct. 2246.

▮ *Monge* provided a clear reminder to courts reviewing sentences imposed under Three Strikes that the Double Jeopardy Clause circumscribes the relevance of recidivism. Under this limitation, petitioner's recidivism cannot be viewed as bearing such weight that the inference of gross disproportionality is weakened. First, under the authorities outlined in *Brown,* 283 F.3d at 1035–36, petitioner's prior kidnapping convictions cannot serve to aggravate his possession of 1.55 grams of heroin. That petitioner was convicted of simple possession of heroin in no way indicates that "the former punishment [for petition-

er's kidnapping offenses] ha[d] been inefficacious in doing the work of reform for which it was designed," nor has it "evidenced a depravity, which merits greater punishment.…" *Moore v. Missouri,* 159 U.S. 673, 677, 16 S.Ct. 179, 40 L.Ed. 301 (1895)(*quoting Plumbly v. Commonwealth,* 43 Mass. (2 Met.) 413, 1841 WL 3384 (1841)). Petitioner's possession offense completely lacks characteristics in common with his kidnapping convictions, and cannot be "considered an aggravated offense because a repetitive one." *Witte,* 515 U.S. at 400, 115 S.Ct. 2199.

Moreover, even if petitioner's current offense were aggravated by his prior convictions, under the analysis in *Monge* petitioner's prior convictions do not destroy the inference of gross disproportionality. While the sentence in *Monge*—double the seven year maximum sentence for using a minor to sell drugs where the offender had previously been convicted of a qualifying felony—was found to be within the constitutionally permissible range, *see id.* at 729, 118 S.Ct. 2246, the inquiry in *Monge* yields different results in the case at bar. The life sentence at issue here is the most severe sentence available after capital punishment. *See Solem,* 463 U.S. at 297, 103 S.Ct. 3001. As noted, petitioner's possession offense is minor, having no potential for widespread social impact, such as that inherent in distribution offenses. Nor did petitioner's offense threaten to destroy a future generation by involving minors. Given the minor nature of petitioner's offense, it is apparent that petitioner's recidivism could not account for the extreme

---

imposed by Three Strikes in terms very similar to those used by Justice Scalia in *Monge, supra.* Unwilling or unable to maintain the fiction that California's recidivism enhancements correspond to an aggravated principal offense, the state's high court has explained, " 'the purpose of section 667.71 is *not* to punish especially aggravated instances of a

particular crime,' but to 'serve[ ] the same purpose as the Three Strikes' law, which is to punish recidivism.' " *People v. Murphy,* 25 Cal.4th 136, 155, 105 Cal.Rptr.2d 387, 19 P.3d 1129 (2001)(emphasis in the original) (citing *People v. Benson,* 18 Cal.4th 24, 34, 74 Cal.Rptr.2d 294, 954 P.2d 557 (1998)).

length of his sentence without breaching the boundaries imposed by the Double Jeopardy Clause. Petitioner's possession of 1.55 grams of heroin, even to the extent it could be considered aggravated by his criminal history, was still a passive, minor offense.

Accordingly, I find that petitioner's prior convictions do not destroy the inference of gross disproportionality created by the life sentence imposed for his offense.

### 2. Intrajurisdictional Comparison

Where defendant's sentence presents an inference of gross disproportionality, "we must assess whether the disputed sentence is excessive when compared to 'sentences imposed on other criminals in the same jurisdiction.'" *Andrade,* 270 F.3d at 761 (citing *Solem,* 463 U.S. at 292, 103 S.Ct. 3001). In making this analysis, the Ninth Circuit compared the sentence under Three Strikes with the sentence that would be received by a first time offender and also compared the sentence under Three Strikes to sentences for other crimes. *See id.*

As already noted, at the time petitioner was sentenced, the maximum possible sentence that could be imposed on a first-time offender for simple possession of heroin was three years in prison. Currently, absent aggravating factors, a first-time offender would receive probation and drug treatment.

Sentences of comparable severity to that imposed on petitioner are ordinarily imposed for much more serious crimes. First degree murder may be punishable by a sentence of 25 years to life. *See Andrade,* 270 F.3d at 761. Second degree murder is punishable by 15 years to life. *Id* at 762. Voluntary manslaughter is punishable by up to 11 years, while a sentence of no more than 8 years is imposed for rape or for sexual assault on a minor. *Id.*

The fact that petitioner's sentence may be comparable to other sentences imposed under Three Strikes is of no persuasive value in this analysis. *See id.* (attempt to justify constitutionally suspect application of a statute by pointing to other applications of the same statute less than convincing).

### 3. Interjurisdictional Comparison

Finally, where there is an inference of gross disproportionality, the court must conduct an interjurisdictional comparison, that is, compare petitioner's sentence to the sentences imposed for commission of the same crime in other jurisdictions. *See Andrade,* 270 F.3d at 756. This is perhaps the most significant stage of proportionality review. As the Court recently explained in *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002):

> Proportionality review under ... evolving standards [of decency] should be informed by " 'objective factors to the maximum possible extent.'" We have pinpointed that the "clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures."

*Id.* at 2247 (citations omitted)(considering the application of the death penalty to the mentally retarded). Although the petitioner in this case does not bring the same sort of a categorical challenge considered in *Atkins,* the deference paid to the interjurisdictional comparison in *Atkins* is no less apt. With this in mind, I consider the petitioner's sentence under California's Three Strikes law as compared with the penalties available in other states for the same offense, as aggravated by petitioner's kidnapping convictions.

As in California, simple possession of heroin is uniformly treated as a relatively minor offense. Eighteen jurisdictions

(seventeen states and the federal government) allow for a term of no more than two years for the offense, absent enhancements.[16] Sixteen jurisdictions allow for a term of more than two, but not more than five years, absent enhancements.[17] Of the remaining jurisdictions, only Colorado and Georgia allow for sentences in excess of ten years.[18] *See* Colo.Rev.Stat. §§ 18–18–405, 18–1–105 (4–12 years); Ga.Code Ann. § 16–13–30 (2–15 years).

Unlike California, however, most jurisdictions' recidivist sentencing schemes are in keeping with the notion that possession of heroin is a relatively minor offense. In twenty-one jurisdictions, a simple possession offense is not deemed to be aggravated by recidivism at all. These jurisdictions would categorically except petitioner's offense from recidivist sentencing enhancements.[19]

16. These jurisdictions are:
Alaska Stat. §§ 11.71.040,12.55.125 (1 year); Ark.Code Ann. §§ 5–64–401, 5–4–401 (up to one year); Del.Code Ann. tit. 16 § 4754, tit. 11 § 4206 (6 months); Ind. Stat. §§ 35–48–4–7, 35–50–2–7 (1½ years); Iowa Code Ann. §§ 124.401, 903.1 (up to 1 year); Kan. Stat. Ann. §§ 65–4162, 21–4502 (up to 1 year); Mass. Gen. Laws Ann. Ch. 94C § 34 (up to 2 years); N.M. Stat. Ann. §§ 30–31–23, 31–18–15 (18 months); N.Y. Penal Law §§ 220.03, 70.15 (up to 1 year); Ohio Rev.Code Ann. §§ 2925.11, 2929.14 (6–12 months); Pa. Cons.Stat tit. 35 § 780–113 (up to 1 year); S.C.Code Ann. § 44–53–370 (up to 2 years); Tenn.Code Ann. §§ 39–17–418, 40–35–111 (up to 11 months and 29 days); Utah Code §§ 58–37–8, 76–3–204 (up to 6 months); Vt. Stat. tit. 18 § 4233 (up to 1 year); W. Va. Code § 60A–4–401 (90 days–6 months); Wis. Stat. Ann. § 961.41(3g)(up to 2 years); 21 U.S.C. § 844(a) (up to 1 year).

17. These jurisdictions are:
Ariz.Rev.Stat. Ann. §§ 13–3407, 13–701 (1½–3 years); Fla. Stat. Ann. §§ 893.13, 775.082 (up to 5 years); Haw.Rev.Stat. §§ 712–1243, 706–660 (up to 5 years); Illinois Comp. Stat. ch. 720 § 570/402, ch. 730 § 5/5–8–1 (1–3 years); Ky.Rev.Stat. Ann. §§ 218A.1415, 532.060 (1–5 years); Me.Rev.Stat. Ann. tit. 17A §§ 1107, 1252 (up to 5 years); 2002 Md. Sess. Laws Ch. 26 § 5–601 (up to 4 years); Mich. Comp. Laws Ann. § 333.7403 (up to four years); Minn.Stat. Ann. § 152.025 (up to 5 years); Mont.Code Ann. §§ 45–9–102 (up to 5 years); Neb.Rev.Stat. §§ 28–416, 28–105 (up to 5 years); Nev.Rev.Stat. §§ 453.336, 193.130 (1–4 years); N.J. Stat. Ann. §§ 2C:35–10, 2C:44–1 (4 years); N.D. Cent.Code 19.03.1–23, 12.1–32–01 (up to 5 years); R.I. Gen. Laws § 21–28–4.01 (up to 3 years); Wash. Rev.Code § 69.50.401 (up to 5 years).

18. These remaining jurisdictions are:
Ala.Code §§ 13A–12–212, 13A–5–6 (1–10 years); Conn. Gen.Stat. Ann. §§ 21a–279 (up to 7 years); Idaho Code § 37–2732 (up to 7 years); La.Rev.Stat. § 40:966 (4–10 years); Miss.Code Ann. § 41–29–139 (2–8 years); Mo. Ann. Stat. §§ 195.202, 558.011 (up to 7 years); N.H.Rev.Stat. Ann. §§ 318–B:26, 651:2 (up to 7 years); N.C. Gen.Stat. §§ 90–95, 15A–1340.17(c)and (d) (presumptive range of 4–6 years minimum duration, 5–8 years maximum duration); Okla. Stat. tit. 63 § 2–402 (2–10 years); Ore.Rev.Stat. §§ 475.992, 161.605 (up to 10 years); S.D. Codified Laws §§ 22–42–5, 22–6–1 (up to 10 years); Tex. Health & Saf.Code § 481.115, Tex. Penal Code § 12.34 (2–10 years); Va. Code Ann. §§ 18.2–250, 18.2–10 (1–10 years); Wyo. Stat. § 35–7–1031 (up to 7 years).

19. In thirteen jurisdictions, possession of heroin is a misdemeanor and, as such, not subject to recidivist sentencing. *See* Ark.Code Ann. §§ 5–64–401(c), 5–4–501; Del.Code Ann. tit. 16 § 4754, tit. 11 § 4214; Iowa Code Ann. §§ 124.401, 902.8; Kan. Stat. Ann. §§ 65–4162, 21–4504; 2002 Md. Sess. Laws ch. 26 §§ 5–601, 14–101(c)(d)and (e); N.Y. Penal Law §§ 220.03, 70.08; Pa. Cons.Stat tit. 35 § 780–113, tit.42 § 9714; S.C.Code Ann. §§ 44–53–370, 17–25–45; Tenn.Code Ann. §§ 39–17–418, 40–35–106; Utah Code §§ 58–37–8, 76–3–203.5; Vt. Stat. tit. 18 § 4233, tit 13 §§ 1, 11, 11a; W. Va.Code §§ 60A–4–401, 61–11–18; 21 U.S.C. § 844, 18 U.S.C. § 3559(a)(6).

In eight jurisdictions, recidivist sentencing schemes are reserved for enumerated serious or violent felonies and/or minor drug crimes are excepted from the recidivist sentencing scheme. *See* Conn. Gen.Stat. Ann. § 53a–28; Fla. Stat. Ann. § 775.084; Minn.Stat. Ann.

The jurisdictions that do provide for some type of sentencing enhancements for prior convictions generally operate under recidivist statutes that are much more limited than California's Three Strikes. For example, where, in California, petitioner's sentence was enhanced by virtue of two convictions arising out of the same kidnapping incident, many states' recidivist laws count only convictions arising out of separate incidents.[20] Similarly, in New Mexico, a recidivist enhancement will not be imposed unless the offender has suffered at least three prior felony convictions. *See* N.M. Stat. Ann. § 31–18–17 (requiring at

least three prior convictions before an enhancement of 8 additional years may be imposed). Thus, in one-third of the jurisdictions in which simple possession can be aggravated by prior convictions, petitioner's kidnapping convictions would not serve to aggravate his possession offense.

Finally, nearly all of the remaining jurisdictions in which petitioner's kidnapping convictions would trigger enhancements provide for much lower maximum enhanced sentences than the minimum mandated by Three Strikes and/or much earlier parole eligibility.[21] Among these states,

§ 609.1095; Ohio Rev.Code Ann. §§ 2929.11, 2929.14; Ore.Rev.Stat. § 161.725; Va.Code Ann. § 19.2–297.1; Wash. Rev.Code §§ 9.94A.120, 9.94A; Wyo. Stat. 6–10–201.

**20.** *See* Colo.Rev.Stat. § 16–13–101; Haw.Rev. Stat. § 706.606.5, *State v. Cornelio*, 84 Hawai'i 476, 935 P.2d 1021 (Haw.S.Ct.1997); Ind.Code § 35–50–2–8; Miss.Code Ann. § 99–19–83; Mo. Ann. Stat. § 558.016; N.H.Rev. Stat. Ann. 651:6; N.J. Stat. Ann. 2C:44–3, 2C:43–7; R.I. Gen. Laws § 12–19–21: 2; Tex. Health & Saf.Code § 481.115(b); Tex. Penal Code § 12.42.

**21.** The following jurisdictions provide for much lower maximum sentences, many of which are further mitigated by the availability of good time credits and parole:
Alaska Stat. §§ 12.55.125, 12.55.145(a)(1)(C)(since two priors not separate, 2 years); Ariz.Rev.Stat. Ann. § 13–604 (8–12 years); 720 Ill. Comp. Stat. § 570/402(c), 730 Ill. Comp. Stat. §§ 5/5–5–3.2, 5/5–8–2 (3–6 years); Ky.Rev.Stat. Ann. § 532.080; § 532:060 (2 priors out of same incident count as one prior, so enhanced sentencing range of 5–10 years); Me.Rev.Stat. Ann. tit. 17–A §§ 1252, 1253 (enhanced sentence of up to 10 years, reduced by good time credit of ten days per thirty days); Mass. Gen. Laws. Ann. ch. 94C § 34 (enhanced to statutory maximum of 1 year); Mich. Comp. Laws. Ann. § 769.11; *People v. Wright*, 432 Mich. 84, 437 N.W.2d 603 (Ct.App.1989) (enhanced to double the statutory maximum of 4 years; minimum term cannot be more than 2/3 the maximum); N.C. Gen.Stat. § 14–7.1, 15A–1340.14 (since 2 priors not separate, not re-

cidivist enhancement; rather, in light of priors, sentencing range of 8–10 months); N.D. Cent.Code §§ 12.1–32–09, 12–54.1–01 (up to 10 years reduced by good time credit of five days per month); Wis. Stat. Ann. 939.62, 304.06 (maximum 2 year sentence may be enhanced to up to 6 years, with parole eligibility after 25% of the sentence served).
Even in the minority of jurisdictions where the enhanced sentencing range gives the courts discretion to apply severe penalties, nearly all mandate an early parole-eligibility date:
Ala.Code §§ 13A–5–6, 13A–5–9; 15–22–28, 15–22–27 (enhanced sentencing range of 10–99 years; parole eligible after 1/3 of sentence or 10 years, whichever less); Ga.Code Ann. § 17–10–7 (with prior, judge must give maximum sentence of 15 years, but has discretion to probate or suspend the maximum; presumptive parole after 1/3 sentence); La.Rev. Stat. §§ 15:529.1, 574.4, *State v. Francis*, 709 So.2d 834 (La.Ct.App.1998) (2 priors subject to the same prosecution count as one; enhanced sentencing range between 5–20 years; parole eligible after½ sentence); Nev.Rev. Stat. § 207.010.2; § 213.120 (with two priors, enhanced sentencing range of 5–20 years; parole eligible after⅓ sentence); 2002 Okla. Sess. Laws ch. 455 section1(A)(2), (C)(2) (amending 21 Okla. Stat. tit. 21 § 51.1); Okla. Stat. tit. 57, 332.7 (since priors not separate, enhanced sentencing range of twice the minimum, i.e. 8 years, to life; parole eligible after the lesser of⅓ sentence or ten years); S.D. Codified Laws §§ 22–7–7, 22–6–1; 24–5–1 (priors allow enhancement up to 15 years; parole eligible after½ the sentence, reduced by "good time").

the greatest length of time that petitioner would have to serve before he would be eligible for release or for parole is ten years. In only Idaho, Montana, and Nebraska do judges appear to have discretion to impose a sentence for which the offender might serve time comparable to the twenty-five year minimum that is required under Three Strikes.[22] In contrast with the enhancement imposed under Three Strikes, however, the prescribed minimum in these three jurisdictions is quite low. *See* note 22, *supra.*

In sum, in thirty one jurisdictions, petitioner's kidnapping convictions would not have triggered enhanced sentencing for his possession conviction at all. Moreover, even taking into account the twenty jurisdictions where petitioner's sentence would have been enhanced, no jurisdiction outside of California would mandate a sentence of greater than 15 years for petitioner. In the one jurisdiction that would mandate a 15 year sentence, the judge has discretion to suspend the maximum, and parole is available after five years. *See* Ga Code Ann. § 17–10–7. More importantly, with the exceptions of Idaho, Montana and Nebraska, in no jurisdiction outside of California does a court have discretion, much less a mandate, to require petitioner to serve more than ten years before he is eligible for release or for parole.

The inference that petitioner's life sentence is grossly disproportionate is fully supported.

## C. REASONABLENESS IN LIGHT OF CLEARLY ESTABLISHED SUPREME COURT LAW

Having found that the petitioner's sentence is grossly disproportionate to his offense, I also find that the state court's decision was contrary to or an unreasonable application of clearly established Supreme Court precedent.

■■■ The general analytic framework for reviewing a sentence for proportionality was clearly established at the time that petitioner's sentence was finally reviewed by the California courts in 1999. *See Andrade v. Attorney General of the State of California*, 270 F.3d 743, 766 (9th Cir. 2001)("[T]he law governing the application of the Eighth Amendment to non-violent offenders sentenced to life imprisonment was clearly established by the time of the Court of Appeal's 1997 decision in this case"). Even assuming, *arguendo*, that the fractured decision in *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) provided enough ambiguity in the law that states could simply claim ignorance and run roughshod over the Eighth Amendment, by the time that the California Court of Appeals reviewed petitioner's sentence the Supreme Court had reiterated the point made by Justice Kennedy in *Harmelin: Solem's* gross disproportionality standard governed. *See Bajakajian*, 524 U.S. at 336–37, 118 S.Ct. 2028 (1998); *see also id.* (opinion of Kennedy, J., for the dissenters, agreeing that the majority had applied the appropriate standard). Indeed, in citing to *People v. Cartwright*, 39 Cal.App.4th 1123, 46 Cal.Rptr.2d 351 (1995), a case analyzing

---

**22.** *See* Idaho Code §§ 19–2514, 19–2513 (with two priors, enhanced sentencing range of 7 years to life; minimum sentence must be specified, after which petitioner is parole eligible); Mont.Code Ann. §§ 46–18–501; 46–18–502; 46–23–201 (conviction within 5 years of punishment for a prior results in enhanced sentencing range of 5–100 years; discretion to suspend sentence in excess of 5 years; parole eligibility after¼ sentence); Neb.Rev. Stat. § 29–2221; §§ 83–170, 83–1, 110 (with two priors, enhanced sentencing range of 10–60 years; parole eligible after½ minimum sentence minus "good time").

a sentence for gross disproportionality, it appears that the California Court of Appeals recognized as much.

Also clearly established at the time petitioner's sentence was reviewed was the rule that, due to the prohibition on double jeopardy, recidivism may only be constitutionally considered in sentencing to the extent that it aggravates the current offense. This rule has been established for more than a century, *see, e.g., Moore v. Missouri,* 159 U.S. 673, 677, 16 S.Ct. 179, 40 L.Ed. 301 (1895), and has been reiterated in the Supreme Court's contemporary jurisprudence concerning gross disproportionality challenges. *See Solem v. Helm,* 463 U.S. 277, 296 n. 21, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). If that were not enough, the Supreme Court applied this rule to determine whether a sentence imposed under the very same recidivist statute operating in this case constituted double jeopardy. *See Monge v. California,* 524 U.S. 721, 729, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998).

Given its terse treatment of petitioner's Eighth Amendment challenge, it is impossible to say whether the Court of Appeals recognized and endeavored to apply the constitutional limitation on the relevance of recidivism established by these cases. Whatever the rationale of the Court of Appeals, its decision was either an outright failure to apply the applicable precedent or an unreasonable application thereof. The sentencing court's decision to impose life imprisonment focused wholly on petitioner's recidivism. Not only did it fail to "focus on the principal offense," *Solem* 463 U.S. at 296 n. 21, 103 S.Ct. 3001, it gave petitioner's principal offense no consideration whatsoever.

Thus, it clearly failed to observe the principle that, in keeping with the strictures of the Double Jeopardy Clause, recidivism is only relevant to enhance a sentence to the extent that it aggravates the principal offense. Had the Court of Appeals applied this rule on review, it could not have ignored the inference of gross disproportionality created by imposing a life sentence for simple possession of heroin—an inference confirmed by the intrajurisdictional and interjurisdictional comparisons it should have made.

### III.

### CONCLUSION

Petitioner's application for a writ of habeas corpus is GRANTED. Within thirty (30) days, the State shall RESENTENCE petitioner in a manner consistent with the Eight Amendment, as explained in this opinion.

IT IS SO ORDERED.